**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JAMES KIM a/k/a Jin Woo Kim, individually and on behalf all other employees similarly situated,

Plaintiff,

- against –

CNL EXPRESS NY INC d/b/a C&L Express d/b/a CNL Express d/b/a Mega Air Express a/k/a CNL Express US a/k/a CNL Express East, YOUNGGUANG PEI, and SAMUEL BAE,

Defendant.

Case No.

**FLSA COLLETIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff James Kim a/k/a Jin Woo Kim, ("Plaintiff")individually and on behalf all other employees similarly situated, by and through his attorneys, Seo Law Group, PLLC, upon his knowledge and belief, and as against CNL EXPRESS NY INC d/b/a C&L Express d/b/a CNL Express d/b/a Mega Air Express a/k/a CNL Express US a/k/a CNL Express East ("Corporate Defendant" or "CNL Express") and YOUNGGUANG PEI, and SAMUEL BAE (collectively, "Individual Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and similarly situated current and former employees who work(ed) as a courier at CNL EXPRESS NY INC d/b/a C&L Express d/b/a CNL Express d/b/a Mega Air Express a/k/a CNL Express US a/k/a CNL Express East (hereafter, also referred to as "CNL Express") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") for various willful and unlawful employment policies, patterns, and/or practices.

2.     CNL Express operates as a courier company that primarily provides courier services to customers throughout New York and New Jersey. CNL Express is responsible for collecting the customers' items and packages at the airports, sorting out parcels based on their destinations, and delivering the items and packages to the customers' desired locations in New York and New Jersey.

3.     CNL Express paid Plaintiff and other similarly situated and former courier workers pursuant to a similar, if not the same, compensation structure.

4.     Defendants classified Plaintiff, and other similarly situated and former couriers, as non-exempt from overtime.

5.     Plaintiff, and other similarly situated and former courier workers, worked broadly as "couriers" and were assigned various tasks at the will and pleasure of the employer to accomplish tasks as the employer saw fit from day to day, meaning that they generally serve CNL Express' customers by waiting for the customers' packages at the airport, picking up the packages, delivering the packages to the designated locations.

6.     This lawsuit is a collective action brought under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and supporting New York State Department of Labor Regulations that seeks to recover minimum wage, overtime compensation, and unpaid wages that Defendants improperly withheld from Plaintiff, and damages for Defendants' failure to provide Plaintiff with Wage Theft Protection Act ("WTPA") statements and notices.

7.     Defendants have deprived Plaintiff and other similarly situated current and former employees of overtime compensation in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

8.     Defendants have deprived Plaintiff and other similarly situated current and former employees of minimum wages, overtime compensation, spread of hours premium, and the wages that they were entitled to receive but did not receive in violation of the NYLL.

9.     Plaintiff brings additional claims for Defendants' retaliatory conduct in violation of the NYLL.

10.     Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and attorneys' fees and costs.

11.     Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premium for each day his work shift exceeded ten (10) hours, (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

12.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

13.     Upon information and belief based on information provided by Plaintiff, who is or was an employee of Defendant CNL Express is an enterprise whose gross volume of sales made, or business done, is in excess of $500,000. Specifically, upon information and belief, based on information provided by Plaintiff, CNL Express is one of the biggest courier companies that

maintains multiple branch offices throughout the U.S. and regularly receives out-of-country customers' orders from all over the world, including South Korea. As such, based on Plaintiff's personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s).

14.   Upon information and belief as well as first-hand knowledge of Plaintiff, CNL Express regularly purchases goods and materials in interstate commerce and Plaintiff regularly handled such goods. Specifically, Defendants advertise on their website that CNL Express offers "clearance, warehousing, and door to door delivery" of the customers' packages, documents and/or items and "we had grown into a company that connected businesses and people in India, Vietnam, China and Korea, delivering goods and dreams." CNL Express' website can be retrieved at the following URL:  https://cnlexpressus.com/services.

15.   Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintained their corporate headquarters and offices within this district, and Defendants operate within this district. Further, Plaintiff was employed by Defendants in this district.

## THE PARTIES

### *Plaintiff*

### *Plaintiff James Kim a/k/a Jin Woo Kim ("Plaintiff")*

16.   Plaintiff is an adult individual residing in Queens County, New York.

17.   Plaintiff was employed by Defendants at CNL Express as a courier from March 2019 until December 30, 2024.

18.   The consent to sue form for the Plaintiff is attached hereto as **Exhibit A.**

### *Defendants*

4

***CNL EXPRESS NY INC d/b/a C&L Express d/b/a CNL Express d/b/a Mega Air Express a/k/a CNL Express US a/k/a CNL Express East ("CNL Express")***

19.     The Corporate Defendant, CNL Express NY INC, (hereafter, "Corporate Defendant" "***CNL Express***") is a domestic business corporation and existing under the laws of the State of New York with a Service of Process address at 207 Redneck Ave, Little Ferry, NJ, United States, 07643 in the New York Department of State record.

20.     Upon information and belief, CNL Express NY Inc operates a courier company under the business name of CNL Express NY Inc, C&L Express, CNL Express, Mega Air Express*,* CNL Express US, and/or CNL Express East.

21.     Upon information and belief, CNL Express maintains several offices and/or warehouses (collectively, "CNL Express") located at:

a. 17501 Rockaway Blvd Fl 1 Jamaica, NY 11434 ("NY Branch Office/Warehouse" or "Former NY Branch Office/Warehouse");

b. 207 Redneck Ave, Little Ferry, NJ 07643 ("New NY Branch Office/ Warehouse");

c. 6710 Wilson Ave. Los Angeles, CA 90001 ("CA Branch"); and,

d. 8320 Isis Ave. Los Angeles, CA 90045 ("CA Trucking Office Branch").

22.     Upon information and belief, CNL Express maintained and continues to maintain a parking garage and/or the space to park the courier vans in New York.

23.     Upon information and belief, CNL Express utilized and kept its vehicles near the New Yor Branch Office/Warehouse located at 17501 Rockaway Blvd Fl 1 Jamaica, NY 11434 until in or around 2022.

24.     Thereafter, CNL Express rented another space to maintain its vehicles located at the corner of 35th Avenue and Parsons Blvd. in New York and required CNL Express couriers to utilize the vehicles and required them to pick-up and drop-off the vehicles at the designated location each day that CNL Express couriers were required to perform their duties.

25.     Upon information and belief, CNL Express was incorporated on January 5, 2017 under the name of "CNL Express NY Inc" according to the New York Department of State Division of Corporations' Entity Information.

26.     Upon information and belief, CNL Express established another business entity under the same business name, "CNL Express NY Inc." in New Jersey on August 31, 2020.

27.     Upon information and belief, CNL Express NY Inc (NY corporation) is a co-operator of CNL Express NY Inc. (NJ Corporation) and shares the physical location of the office located at 207 Redneck Ave, Little Ferry, NJ 07643 to serve CNL Express' customers in New York and New Jersey.

28.     Upon information and belief, CNL Express lists 201-440-2972 as its business telephone number on its website.

29.     Upon information and belief, CNL Express also lists or listed 718-612-9245 and/or 323-484-9430/9460/9480 as its other business telephone numbers.

30.     Upon information and belief CNL Express' business telephone number, 718-612-9245, is Defendant Samuel Bae's personal cell phone number.

31.     Upon information and belief, CNL Express also receives customers' orders and/or inquiries via telephone, email addressed at ocean@cnlexpressus.com and/or airshipment@cnlexpressus.com and/or through its website addressed at https://cnlexpressus.com/.

32.    Upon information and belief, CNL Express is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and it has each had annual gross volume sales of not less than $500,000.

33.    CNL Express is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as courier service company with a NY Branch Office/Warehouse located at 17501 Rockaway Blvd Fl 1 Jamaica, NY 11434; other business site located in New York near 35th Avenue and Parson Blvd., and New NY Branch Office/Warehouse located at  207 Redneck Ave, Little Ferry, NJ 07643.

34.    Upon information and belief, CNL Express maintained and/or maintains at least two automobiles (e.g., a Dodge van Plate No. 67255MN; and Ford van) to provide courier services to its customers. At all relevant times, CNL Express' automobiles have been maintained and utilized in the State of New York.

### Defendant YOUNGGUANG PEI ("Defendant Pei")

35.    Upon information and belief, Defendant Youngguang Pei (hereafter, "Defendant Pei") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporation during the relevant time period, and he is sued individually. Defendant Pei has possessed and exercised operational control over Defendant Corporation, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants'

employees, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Pei has a prominent role in the setting of salaries for CNL Express' employees and hires and fires CNL Express' employees.

36.    Upon information and belief, Defendant Pei has ownership interest in the Corporate Defendant, and he is the CEO and general supervisor of all his employees and the employees of the CNL Express.

37.    Upon information and belief, Defendant Pei is the CEO and "chairman" of CNL Express and controls all of the CNL Express' Branch Offices/Warehouses and supervises CNL Express's employees primarily at the CA Branch located at 6710 Wilson Ave. Los Angeles, CA 90001.

38.    Defendant Pei is known to Plaintiff as the "president" of CNL Express.

39.    Defendant Pei is known to Plaintiff to be Defendant Samuel Bae's direct "boss" and exercised direct supervisory authority over Plaintiff, together with Defendant Samuel Bae, while working as CNL Express' courier worker.

40.    Upon information and belief, Defendant Pei manages all aspects of the Corporate Defendant's, finances including handling its employees' payroll together with Defendant Samuel Bae.

41.    Upon information and belief, Defendant Pei is a signatory of the Corporate Defendant CNL Express's business account(s).

***Defendant SAMUEL BAE ("Defendant Bae")***

42.    Upon information and belief, Defendant Samuel Bae (hereafter, "Defendant Bae") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant

8

Corporation during the relevant time period, and he is sued individually. Defendant Bae has possessed and exercised operational control over Defendant Corporation, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Bae has a prominent role in the setting of salaries for CNL Express' employees and hires and fires CNL Express' employees.

43.     Upon information and belief, Defendant Bae has ownership interest in the Corporate Defendant, and he is the owner and supervisor of all his employees and the employees of the CNL Express, specifically at the Former and New NY Branch Offices/Warehouses.

44.     Upon information and belief, Defendant Bae operates CNL Express under the name of "General Manager (NY)" and directly controls and supervises CNL Express's employees primarily at the Former NY Branch Office/Warehouse located at 17501 Rockaway Blvd Fl 1 Jamaica, NY 11434  and New NY Branch Office/Warehouse at 207 Redneck Ave, Little Ferry, NJ 07643.

45.     Upon information and belief, CNL Express issued a business card to Defendant Bae, and his business card reflected his title as "General Manager (NY)" and Defendant Bae's cell phone number, 718-612-9245.

46.     Defendant Bae is known to Plaintiff as the "person in charge" of CNL Express' New York Branch Offices/Warehouses.

47.     Defendant Bae is known to Plaintiff to be Defendant Pei's "right-hand man" and exercised direct supervisory authority over Plaintiff, together with Defendant Pei, while working as CNL Express's courier.

48.    Upon information and belief, Defendant Bae manages all aspects of the Corporate Defendant's, finances including handling its employees' payroll together with Defendant Pei.

49.    Upon information and belief, Defendant Bae is a signatory of the Corporate Defendant CNL Express's business account(s), together with Defendant Pei.

50.    Plaintiff was "employee" of Individual Defendants Pei and Bae within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

51.    Plaintiff was "employee" of Corporate Defendant, CNL Express, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

52.    Defendants Pei, Bae and Corporate Defendant, through Individual Defendants, controlled the hours, the task assignments and the overall work associated with Plaintiff's work that he performed during his employment with Defendants.

53.    Defendants Pei, Bae, and Corporate Defendant, through Individual Defendants, controlled the terms and conditions of Plaintiff's employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

54.    Defendants operate a courier service business where the Plaintiff worked. At all relevant times, Individual Defendants Pei and Bae possess or possessed operational control over Corporate Defendant; possess or possessed an ownership interest in Corporate Defendant; and control or controlled significant functions of Corporate Defendant.

55.    Corporate Defendant and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

10

56.    At relevant times, Corporate Defendant possessed substantial control over Plaintiff's and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

57.    Corporate Defendant employed Plaintiff, and all similarly situated individuals, and is Plaintiff's and all similarly situated individuals' employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

58.    In the alternative, CNL Express and its Branch Offices/Warehouses constitute a single employer of Plaintiff and/or similarly situated individuals, as the corporate divisions between the Branch Offices are fictional.

59.    Upon information and belief, Individual Defendants operate Corporate Defendant as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a.    failing to adhere to the corporate formalities necessary to operate Corporate Defendant as a Corporation;

b.    defectively forming or maintaining the corporate entity of Corporate Defendant, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c.    transferring assets and debts freely as between all Defendants and CNL Express and its Branch Offices/Warehouses;

d.    operating Corporate Defendant for his/their own benefit as the sole or majority shareholders;

e.  operating Corporation Defendant for his/their own benefit and maintaining control over this corporation as a close corporation;

f.  intermingling assets and debts of his/their own with Corporate Defendant;

g.  diminishing and/or transferring assets of Corporate Defendant to avoid full liability as necessary to protect their own interests, and

h.  Other actions evincing a failure to adhere to the corporate form.

60.  At all relevant times, Individual Defendants were Plaintiff's employers within the meaning of the FLSA, NYLL and other law.

61.  Individual Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

62.  Individual Defendants supervised Plaintiff's work schedules and conditions of his employment.

63.  Individual Defendants also determined the rate and method of payment for Plaintiff and other similarly situated employees.

64.  Individual Defendants also controlled and guided what limited recordkeeping that took place which Plaintiff contends is deficient pursuant to FLSA and NYLL requirements.

### Plaintiff JAMES KIM a/k/a Jin Woo Kim

65.  Plaintiff was employed by Defendants at CNL Express as a courier from approximately March 2019 until December 30, 2024.

66.  Defendants committed the following alleged acts knowingly, intentionally and willfully.

67.  Defendants knew that the nonpayment wages and illegal deductions from Plaintiff's

12

and the Collective Action Members' wages would economically injure them and violated federal and state laws.

68.     Upon information and belief, CNL Express has or had at least three (3) courier employees working at the New York Branch Offices/Warehouses.

69.     During Plaintiff's employment, he specifically worked for CNL Express' New York Branch Offices/Warehouses and provided his service to CNL Express' New York Branch Offices' customers.

70.     Plaintiff's duties were as follows:

a.  Receiving a list of CNL Express' New York Branch Offices/Warehouses customers' orders;

b.  Picking up CNL Express' automobile (e.g., van) (hereafter, the "van") at the designated parking area(s) in New York;

c.  Driving the van to the designated airport(s) (e.g., JFK or in Newark);

d.  Waiting for the packages and/or items at the airport(s) until they arrive;

e.  Sorting out the packages and/or items depending on the customers requested locations at the airport(s) or CNL Express' New York Branch Offices/Warehouses;

f.  Driving the van and making deliveries of the packages and/or times to CNL Express' local customers at their requested designations;

g.  Communicating with CNL Express' customers via telephone to address the customers' concerns as to the status of the delivery and/or sending pictures of the packages and/or items reflecting the location of the delivery as needed;

h. Traveling to CNL Express' New York Branch Offices/Warehouses and dropping off the documents reflecting the completion of the customers' orders for the day; and,

i. Driving back to CNL Express' parking area and parking the van at the designed location in New York.

j. Standing by and receiving CNL Express' other instructions as to the change and/or cancellation of the following day's shipment schedules and/or any other amended shipping instructions.

71. After Plaintiff learned of the job opportunity with CNL Express from his acquaintance, Plaintiff reached out to Defendant Bae via telephone to inquire about the opportunity.

72. During the telephone conference, Defendant Bae scheduled Plaintiff's interview and requested Plaintiff to come to the café near Defendant Bae's residence to conduct his interview.

73. A few days later, Defendant Bae conducted Plaintiff's interview at the café located at 43-29 162nd Street in Queens, New York.

74. At the interview, Defendant Bae introduced himself to Plaintiff as "the manager" of CNL Express and the person who was in charge of CNL Express' New York Branch Offices/Warehouses. During the interview, Defendant Bae inquired Plaintiff's work experience and qualifications, and discussed Plaintiff's rate of pay to be paid $20 per hour (or at least $800 per week for an 8-hour shift per day for 5 days per week).

75. A few days after Plaintiff's interview, Defendant Bae called Plaintiff and informed him that he was hired and set Plaintiff's start date.

14

76.    Shortly thereafter, in or around early March 2019, Plaintiff began working as CNL Express's courier employee at the Former New York Branch Office/Warehouse located at 17501 Rockaway Blvd Fl 1 Jamaica, NY 11434 until CNL Express relocated its New York Branch to a new location addressed at 207 Redneck Ave, Little Ferry, NJ 07643 in or around late 2020.

77.    Plaintiff met Defendant Pei sometime after he started working at CNL Express. Defendant Pei physically came to CNL Express' New York Branch Offices/Warehouses approximately twice per year and directly supervised the employees, including Plaintiff, for four (4) to seven (7) days each time he visited the NY Branch Offices/Warehouses.

78.    Upon information and belief, Defendant Pei primarily worked at the CA Branch(es), but continuously managed and supervised CNL Express' employees in NY Branch Offices/Warehouses, tougher with Defendant Bae.

79.    Upon information and belief, whenever Defendant Pei was not present at the NY Branch(es), Defendant Bae exercised sole discretion make important business decisions, except for setting the employees' rates of pay.

80.    For the weeks that Defendant Pei worked at the New York Branch Offices/Warehouses, he often required CNL Express' NY Branch employees to attend the "company dinner."

81.    At the "company dinner," Defendant Pei often made some "encouraging comments" to the NY Branch Offices/Warehouses' employees. Defendant Pei stated to Plaintiff that although CNL Express was recently established, the business had been rapidly growing, and "if we continue to work hard, it would be even better."

82.    At CNL Express, Plaintiff was required to utilize CNL Express' van to perform his job duties as a courier.

15

83. While CNL Express were maintaining its New York Branch Office/Warehouse in Jamaica, Plaintiff were required to pick up and drop off the van at CNL Express' designated parking area near the Former New York Branch office/Warehouse.

84. After CNL Express relocated the Former New York Branch office/Warehouse to the new location, CNL Express rented another parking lot located at the corner of 35th Avenue and Parsons Blvd. in Queens, New York and maintained CNL Express's van at the parking lot.

85. Throughout Plaintiff's employment with CNL Express, Plaintiff was required to utilize CNL Express' van(s) maintained in New York to work as CNL Express' courier employee.

86. From **March 2019 until around early 2022**, CNL Express required Plaintiff to pick up the customers' packages and/or items at John F. Kennedy International Airport (JFK) and deliver the pages and/or items to the customers' designated locations. During this period, Plaintiff generally worked from 7:30 am until as late as 7:00 pm for five (5) days per week from Monday to Friday for approximately 62.5 hours per week, except for certain weeks that Plaintiff had to work additional hours on Saturdays.

87. When Plaintiff was required to drive to JFK to pick up the customers' packages and/or items, Plaintiff started working at 7:30 am to pick up the van maintained at CNL Express' parking location and headed to the airport. At JFK, Plaintiff was required to wait for the packages and/or items for a few hours until they arrive, and sometimes Plaintiff was required to stand-by at the airport for over five (5) hours until the shipment arrived and/or Defendant Bae instructed Plaintiff to take off due to the change of the shipment schedule.

88. Whenever Defendant Bae instructed Plaintiff to take off at the airport, Defendants deducted $10.00 per day if Plaintiff if he had to take off at the airport on *weekdays*.

16

89.    Whenever Defendant Bae instructed Plaintiff to take off at the airport on *Friday*, Defendant Bae required Plaintiff to work on the following day on Saturday and paid Plaintiff only for eight (8) hours of work regardless of how many hours Plaintiff worked on those two days on Friday and Saturday.

90.    On the days that Plaintiff was able to pick up the packages and/or items at JFK, Plaintiff had to drive back to CNL Express' Former NY Branch Office/Warehouse in Jamacia and unpack the shipment and sorted out the packages and/or items. After CNL Express moved its New York Branch Office/Warehouse to the new location, Plaintiff was required to unpack the shipment and sort out the packages and/or items at the airport's parking lot. Plaintiff generally spent approximately 30-40 minutes to sort out the packages and/or items depending on the locations.

91.    As soon as the packages and/or items were ready to be delivered, Plaintiff drove the van to each of the customers' destinations and communicated with the customers whenever they inquired about the status of the packages and/or requested a picture of the delivered items if they were unable to present at the destinations.

92.    After Plaintiff completed delivery, he was required to come to the NY Branch Offices/Warehouses and return the "work slip" reflecting completion of the delivery for the day.

93.    Thereafter, Plaintiff was required drive to CNL Express' parking area(s) located in Queens, New York and took off around 6:00 pm and 7:00 pm each day.

94.    From in around **2022 until December 30, 2024**, CNL Express required Plaintiff to pick up the customers' packages and/or items at Newark Liberty International Airport (EWR) for two (2) days per week on Mondays and Tuesdays while Plaintiff was still required pick up the shipment at JFK on the rest of 3-4 days.

95.    When Plaintiff was required to pick up the packages and/or items at EWR, his shift generally lasted a few hours short for approximately (9.5) hours per day, from around 7:30 am to 5:00 pm, because he was able to pick up the packages and/or items sooner at EWR. As such, since Defendants required Plaintiff to receive the package's and/or items at EWR on Mondays and Tuesdays, Plaintiff generally worked (47.5) hours per week on average, except for the weeks that Defendants required him to work additional hours on Saturdays.

96.    Throughout Plaintiff's employment at CNL Express, Defendants never paid Plaintiff for the work that he performed on Saturdays regardless of how many hours he worked.

97.    Instead, Defendants arbitrarily calculated the two days of work that Plaintiff performed on Friday and Saturday at a fixed rate and issued the payment as if Plaintiff worked only 8-hours on Friday.

98.    While working at CNL Express, Defendants paid Plaintiff in every 15 days at a fixed amount, except for the weeks that Defendants deducted $10.00 per day for the days that Defendant Bae instructed Plaintiff to take off regardless of how many hours Plaintiff was required to wait for the packages and/or items at the airports.

99.    In the beginning of Plaintiff's employment approximately for 2 years, Defendants paid Plaintiff approximately $1,650.00 in every 15 days, $750.00 by check and the rest of the compensation in cash, without a paystub.

100.    Since in or around 2022, Plaintiff received approximately $2,000.00 per every 15-days, $1,300.00 by check and the rest of the compensation in cash, without a paystub.

101.    On certain months that the payday (15th or 30th/31st) fell on Sundays, Defendants issued Plaintiff's compensation on the following day.

18

102. Throughout Plaintiff's employments, Defendants never informed Plaintiff as to how they calculated his compensation.

103. Defendants never informed Plaintiff of the reason why they refused to pay Plaintiff for the work that he performed on Saturdays.

104. Defendants did not permit, nor did they require Plaintiff record how many hours that he actually worked throughout his employment at CNL Express.

105. Defendants did not pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiff's spread of hours exceeded ten hours.

106. Plaintiff is non-exempt under FLSA and the NYLL. Among other things, Plaintiff did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff's employment for Defendants was physical labor.

107. Plaintiff regularly handled goods in interstate commerce, such as handling customers' packages/items and other business inventory that were produced outside of the State of New York.

108. Plaintiff's work duties required neither discretion nor independent judgment.

109. At all relevant times hereto, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff's, all other similarly situated individuals', lawfully earned wages.

110. Specifically, Defendants arbitrary deducted Plaintiff's, and all similarly situated individuals' portion of the wages whenever CNL Express' couriers were required to take off at the airports.

111. Defendants unlawfully withheld a portion of Plaintiff's wages and other similarly situated courier employees' portion of wages.

112.    Plaintiff was not able to hire or fire for Defendants, nor recommend hiring or firing.

113.    Plaintiff did not supervise any of CNL Express' employees at any time during his employment at CNL Express.

114.    Defendants committed the foregoing acts against Plaintiff and the Collective Action Members.

*__Plaintiff's Retaliation Claims__*

115.    While Plaintiff was working as CNL Express' courier, he was required to pick up and drop off CNL Express' "van" maintained in New York and utilized the vehicle to perform his job duties on a daily basis.

116.    Approximately 2-3 years ago, Plaintiff got involved in an auto accident and was severely injured while working on the job.

117.    After Plaintiff got involved in the accident, Plaintiff reported the accident to Defendant Bae, and upon information and belief, Plaintiff filed a workers' compensation claim with CNL Express.

118.    Due to the injury, Plaintiff was required to seek medical treatment and physical therapy for a long time until around February 2024.

119.    Defendant Bae often commented to Plaintiff that Defendant Pei was upset because his worker's compensation claim caused "damages" to CNL Express.

120.    During Plaintiff's employment at CNL Express, Defendants arbitrarily deducted $10.00 per day if the customers' packages and/or items did not arrive at the airport(s) and/or whenever Defendant Bae instructed Plaintiff to take off.

121.    Defendants refused and continued to fail to pay Plaintiff for the work that he performed on Saturdays regardless of how many hours he was required to work.

20

122.    On or around December 13, 2024, Plaintiff got involved in another auto accident while driving CNS Express' vehicle and performing his duties.

123.    When Plaintiff reported the incident to Defendant Bae, Defendant Bae refused to apply CNL Express' insurance coverage and stated to Plaintiff that he did not want CNL Express' insurance premium to be increased.

124.    Plaintiff complained to Defendant Bae that he was not paid for more than 15 days, but Defendant Bae seemed upset, and Defendants refused to pay Plaintiff's compensation in a timely manner.

125.    On the last day of Plaintiff's employment, on or around December 30, 2024, Defendant Bae made baseless accusations to Plaintiff that, "you sue the company" and "damaged" CNL Express although Plaintiff did not file any lawsuits against CNL Express and/or any other Defendants.

126.    Defendant Bae conveyed Defendants' decision to terminate Plaintiff because Defendant Pei was "really upset," that CNL Express incurred a lot of money on the attorney's fees to defend the claims that Plaintiff allegedly filed [but Plaintiff had no knowledge of], and CNL Express' auto insurance policy premium was incased [due to the on-the-job injury Plaintiff suffered 2-3 years ago].

127.    After Defendant Bae made wrongful accusations to Plaintiff for the things that he did not do and/or he was not even aware of, Defendants immediately terminated Plaintiff at the site.

### FLSA COLLECTIVE ACTION ALLEGATIONS

128.    Plaintiff brings the claims, Count I, as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all courier service employees employed by Defendants at

CNL EXPRESS NY INC d/b/a C&L Express d/b/a CNL Express d/b/a Mega Air Express a/k/a CNL Express US a/k/a CNL Express East on or after the date that is three years before filing of the Complaint in this case as defined herein (the "Collective Action Members").

129.    At all relevant times, Plaintiff and the other Collective Action Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully retaining their earned wages. The claims of Plaintiff stated herein are essentially the same as those of the other Collective Action Members.

130.    Count I of Plaintiff's claims are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The Collective Action Members are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the Collective Action Members via first class mail to the last address known to Defendants.

**STATEMENT OF CLAIM**

**COUNT I**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiff and the FLSA Collective]**

131.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

132.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half

22

times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

133. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

134. Defendants have failed to pay Plaintiff's premium overtime wages to which they are entitled under the FLSA at the rate of time and one-half for all hours worked in excess of 40 hours per week.

135. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

136. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff's.

137. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

138. As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being premium overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiff]**

139. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

23

140.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

141.    At all times relevant, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

142.    Defendants have failed to pay Plaintiff the minimum wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations.

143.    Through their knowing or intentional failure to pay minimum hourly wages to plaintiff, Defendants have willfully violated the NYLL, Article 19, NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

144.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants unpaid minimum wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT III**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff]**

145.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

146.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

147.    Defendants have failed to pay Plaintiff premium overtime wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of 40 hours per week.

148. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

149. Due to Defendants' willful violations of the NYLL, Plaintiff id entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT IV
### [Violation of New York Labor Law—Spread of Hour Pay Brought on behalf of Plaintiff]

150. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

151. Defendants regularly and knowingly required Plaintiff work for a spread of hours equal to, or greater than, ten (10) hours per day.

152. Defendants knowingly, willfully, and intentionally failed to pay Plaintiff one extra hour's pay at the basic minimum wage for every day in which the interval between Plaintiff's start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4.

153. Because of Defendants' willful violation of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid wages originating from the spread of hours provision, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## COUNT V
### [Violation of New York Labor Law—Wage Notices Brought on behalf of Plaintiff]

154. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

155.    Defendants have willfully failed to supply Plaintiff with a wage notices, as required by NYLL, Article 6, § 195(1),  in English, or in the language identified by Plaintiff as his primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191;  the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

156.    Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

157.    Due to defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**COUNT VI**
**[Violation of New York Labor Law—Wage Statements**
**Brought on behalf of Plaintiff]**

158.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

159.    Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer;

rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

160.    Through their knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

161.    Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198-1(d).

### COUNT VII
### [Violation of The New York Labor Law NYLL Section 215
### Retaliation: Brought on behalf of Plaintiff]

162.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

163.    NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

164.    While working at C&L Express, Plaintiff repeatedly complained to Defendants, through Defendant Bae, that Plaintiff was not paid any compensation for the days that he worked on Saturdays.

165.    However, Defendants refused and continued to fail to pay Plaintiff for the work that

he performed on Saturdays regardless of how many hours he was required to work and arbitrarily deducted $10.00 per day from Plaintiff's compensation if the customers' packages and/or items did not arrive at the airport(s) and/or whenever Defendant Bae instructed Plaintiff to take off.

166.    Defendants failed to pay Plaintiff when Plantiff was required to work on Saturdays and eventually terminated Plaintiff after making baseless accusations to Plaintiff that, "you sue the company" and "damaged" CNL Express although Plaintiff did not file any lawsuits against CNL Express and/or any other Defendants.

167.    In committing the above-mentioned retaliatory acts, Defendants discharged Plaintiff, and retaliated against him for making such complaints about Defendants' violation of the NYLL as Plaintiff did not receive any compensation for the work that he performed on Saturdays and a portion of his compensation was withheld and/or deducted when the packages and/or items did not arrive at the airport as scheduled.

168.    As a direct and proximate result of Defendants unlawful conduct, as set forth herein, Plaintiff sustained damages and seek recovery for retaliation in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 215 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that this Court enter a judgment:

a)    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

28

b)      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c)      Designation of Plaintiff as a Representative of the Collective Action Members;

d)      An order declaring that the Defendants violated the FLSA;

e)      An order declaring that the Defendants violations of the FLSA were willful;

f)      An order declaring that the Defendants violated the NYLL;

g)      An order declaring that the Defendants' violations of the NYLL were willful;

h)      An award of minimum wage compensation under the NYLL;

i)      An award of spread of hours premium under the NYLL;

j)      An award of damages pursuant to New York Labor Law §§ 195(1), (3), and 198;

k)      An award of Plaintiff's compensatory damages, including all unpaid wages owed and unlawfully deducted in an amount according to proof;

l)      An award of Plaintiff's compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful retaliatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to his reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, and any other out of- pocket losses that Plaintiff has incurred or will incur;

m)      An award of Plaintiff's liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

n)      An award of Plaintiff's pre-judgment and post-judgment interest under the FLSA and the NYLL;

o)      Granting an injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

p)      An award of Plaintiff's reasonable attorneys fees' and costs pursuant the FLSA and the NYLL; and,

q)      Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated:  Flushing, New York               **SEO LAW GROUP, PLLC**
        March 6, 2025

                                    By:     /s/ Diana Seo
                                            Diana Seo, Esq.
                                            136-68 Roosevelt Ave., Suite 726
                                            Flushing, New York 11354
                                            Telephone: (718) 500-3340
                                            Email: diana@seolawgroup.com
                                            *Attorneys for Plaintiff*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

To: Youngguang Pei

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that James Kim intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of CNL Express NY Inc for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them or the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: March 6, 2025

32

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

To: Samuel Bae

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that James Kim intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of CNL Express NY Inc for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them or the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: March 6, 2025

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:

CNL Express NY Inc.
207 Redneck Ave.
Little Ferry, NJ 07643

CNL Express NY Inc.
17501 Rockaway Blvd Fl 1
Jamaica, NY 11434

PLEASE TAKE NOTICE, that James Kim pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to him as laborer, servant and/or employee of the above corporation for services performed by him for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who has expressly authorized the undersigned, as their attorney, to make this demand on his behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, it is subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporation and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: March 6, 2025

33

34

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: March 6, 2025

35

**EXHIBIT A**

35

**CONSENT TO SUE
UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by <u>CNL Express NY Inc</u> and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

<u>James Kim a/k/a Jin Woo Kim</u>
Full Legal Name

_____
Signature

_____2/19/25_____
Date